IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GUSTAVO CORTINAS, III,<br>　　　　*Plaintiff* | § § § § | |
| -vs- | § § | SA-21-CV-00309-XR |
| COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　　　*Defendant* | § § § § | |

**ORDER**

On this date, the Court considered United States Magistrate Judge Elizabeth Chestney's Report and Recommendation related to the above-numbered and styled case, filed July 18, 2022 (ECF No. 21) and Plaintiff Gustavo Cortinas III's objections, filed on August 1, 2022 (ECF No. 22). After careful review, the Court **ACCEPTS** Magistrate Judge Chestney's recommendation and **AFFIRMS** the Commissioner's decision.

**BACKGROUND**

This case involves Plaintiff Gustavo Cortinas III's ("Cortinas") request for review of the administrative denial of his application for disability benefits and Supplemental Social Security Income ("SSI") under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § 405(g).

Cortinas applied for disability benefits and SSI on August 20, 2018, and December 7, 2018, respectively, alleging a disability onset date of June 2, 2017. ECF No. 10-5 at 2, 6. At the time of his alleged onset disability, Cortinas was forty-five years old and had a GED. ECF No. 10-2 at 19–20. Cortinas's past relevant work includes employment as a highway maintenance worker and an

1

electrician helper. *Id.* at 19. Cortinas asserts that he has the following disabling conditions: gout, high blood pressure, high cholesterol, heart, and vision issues, arthritis and tendonitis in his left foot, diabetes, and neuropathy. ECF No. 10-3 at 4–5.

Cortinas's applications for disability benefits and SSI were denied on January 7, 2019. *Id.* at 16–17. His applications were denied again upon reconsideration on April 12, 2019. *Id.* at 42–43. Following the denials of his applications, Cortinas requested an administrative hearing before an Administrative Law Judge ("ALJ"). Cortinas and a vocational expert, Michael Driscoll, testified at the hearing. ECF No. 10-2 at 30. After applying the five-step analysis required by the regulations, the ALJ concluded that Cortinas was not disabled for purposes of the Social Security Act, and therefore not entitled to receive disability benefits or SSI. *Id.* at 21. Cortinas requested review of the ALJ's decision, but his request was denied by the Appeals Council on January 27, 2021. *Id.* at 2. On March 27, 2021, Cortinas filed this case, seeking review of the administrative determination. ECF No. 1.

## DISCUSSION

### I. Applicable Legal Standards

#### A. Standard of Review

When the report and recommendation has been objected to, the Court reviews the Magistrate Judge's recommended disposition *de novo* under Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1). In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (the court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez*, 64 F.3d at 174.

B.  **Entitlement to Benefits**

Every individual who is insured for disability benefits, has not reached retirement age, has filed an application for benefits, and is under a disability, is eligible to receive disability insurance benefits. 42 U.S.C. § 423(a)(1). Similarly, disabled individuals are eligible to receive SSI. 20 C.F.R. § 416.202(a)(3). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work. *Id.* § 423(d)(2)(A).

### C. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner require disability claims to be evaluated by a prescribed five-step process. 20 C.F.R. § 404.1520. A finding that a claimant is disabled or not disabled at any point is conclusive and terminates the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The first step involves determining whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience. *Id.* The second step involves determining whether the claimant's impairment is severe. *Id.* § 404.1520(c). An impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. If a claimant has no severe impairments, the claimant is considered not disabled. This second step requires the claimant to make a *de minimis* showing. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

In the third step, the ALJ compares the severe impairment(s) with those on a list of specific impairments. 20 C.F.R. § 404.1520(d). If a claimant's impairment meets or equals a listed impairment, the claimant is considered disabled without considering his age, education, or work

experience. *Id.* If the impairment is not on the list, the ALJ moves on to the fourth step and reviews the claimant's residual functional capacity ("RFC") and the demands of his past work. *Id.* § 404.1520(e). At this step, the ALJ may consult a vocational expert to determine how a particular job is usually performed. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see also Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). If the claimant is still able to do his past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant cannot perform his past work, the ALJ moves to the fifth and final step, evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work. *Id.* § 404.1520(g). If the claimant cannot do other work, he will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the sequential analysis. Once the claimant has shown that he cannot perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, considering his exertional and non-exertional limitations, able to maintain for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he cannot perform the alternative work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

## II.  Analysis

Cortinas raises a single point of error in his appeal: that the ALJ's RFC determination is not supported by substantial evidence because the ALJ rejected the sole medical opinion in the

record without properly explaining how she evaluated the supportability and consistency of the opinion and instead relied on her own lay opinion in forming the RFC. ECF No. 13 at 7.

### A. The ALJ's Determination

The ALJ concluded that Cortinas met the insured-status requirements of the Social Security Act and applied the five-step analysis of the regulations. ECF No. 10-2 at 13–14. At step one, the ALJ found that Cortinas had not engaged in substantial gainful activity since June 2, 2017, the alleged disability onset date. *Id.* at 14. At step two, the ALJ found that Cortinas had the severe impairments of diabetes mellitus II with neuropathy, calcaneal spur and arthritic changes of the left foot, and obesity. *Id.* At step three, the ALJ found that Cortinas's impairments did not meet the severity of one of the listed impairments in the applicable Social Security regulations to render Cortinas presumptively disabled. *Id.* at 14–15.

Before reaching step four, the ALJ found that Cortinas had the RFC to perform light work with some physical limitations: Cortinas can only occasionally climb ramps and stairs with bannisters; he can never climb ladders, ropes, scaffolds; he cannot work at unprotected heights or around dangerous moving machinery, such as in a factory; he can occasionally reach overhead with bilateral upper extremities; he can frequently handle and feel with bilateral upper extremities; and he can occasionally operate foot controls, but he cannot be required to operate a motor vehicle to perform his work; he is to avoid frequent climbing of stairs; he can never crawl or climb; and can only occasionally balance, stoop, kneel, or crouch. *Id.* at 16. The ALJ did not include any mental limitations for Cortinas. *See id.* At step four, the ALJ concluded that Cortinas cannot perform his past relevant work as an electrician helper or a highway maintenance worker. *Id.* at 19. Finally, at step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Cortinas can perform, such as a small products assembler, laundry

sorter, or bench assembler. *Id.* at 20. Accordingly, the ALJ determined that Cortinas was not disabled for purposes of the Social Security Act, and therefore not entitled to receive disability insurance benefits or SSI. *Id.* at 21.

### B. The Magistrate Judge's Report and Recommendation

The Magistrate Judge concluded that the ALJ did not err in her evaluation of the medical opinion and that the ALJ's RFC determination is supported by substantial evidence. ECF No. 21 at 5. First, the Magistrate Judge determined that the fact that an ALJ found the sole medical opinion of record only partially persuasive does not constitute reversible error unless (1) the ALJ also applied the incorrect legal standard in evaluating the evidence, or (2) substantial evidence does not support the ALJ's ultimate resolution of that evidence. *Id.* at 8. Neither situation applies here, the Magistrate Judge concluded. *Id.* The Magistrate Judge explained that the ALJ built a "logical bridge between the evidence and the RFC determination." *Id.* at 10. Further, the Magistrate Judge concluded that even with the rejection of portions of the medical opinion, the record contains substantial evidence to support the ALJ's assessment that Cortinas can engage in modified light work. *Id.* at 11.

### C. Cortinas's Objections

Cortinas's objections to the Magistrate's Report and Recommendation re-urges the point of error he first briefed. Cortinas re-asserts that the ALJ's RFC determination was unsupported by substantial evidence and that the ALJ improperly "played doctor" in formulating a less restrictive RFC than the only medical opinion in Cortinas's file. ECF No. 23 at 1.

### D. Discussion

The ALJ adequately explained her evaluation of the medical evidence, and her RFC determination is supported by substantial evidence. Accordingly, the Court must affirm the Commissioner's determination.

The only medical opinion in the record is from Cortinas's primary care physician, Dr. Nonyerem Osuji, dated November 6, 2018. Dr. Osuji opines that Cortinas suffers from left foot pain, neuropathy, and uncontrolled diabetes. ECF No. 10-7 at 68. Specifically, Dr. Osuji notes that Cortinas can stand or walk for one hour and sit for seven hours in an eight-hour workday; he can frequently lift and carry up to 10 pounds and occasionally lift and carry 20–50 pounds; he does not need to recline or lie down during an eight-hour workday; he does not require any unscheduled breaks; he has no limitations on his ability to perform repetitive reaching, grasping, twisting, handling, or fine finger manipulation; he can walk one to two city blocks without rest or significant pain; his symptoms would often be severe enough to interfere with the attention and concentration required to perform simple work-related tasks; his medications could cause dizziness, fatigue, and abdominal pain; and he is likely to be absent from work once or twice a month due to his impairments or treatments. *Id.* at 68–69.

In assessing Cortinas's RFC, the ALJ found Dr. Osuji's opinion only partially persuasive. The ALJ declined to adopt Dr. Osuji's limitations regarding standing and walking, attention and concentration, and absenteeism. Cortinas argues that the reasons discussed by the ALJ for rejecting Dr. Osuji's standing and walking, attention and concentration, and absenteeism limitations are insufficient under the governing regulations. Cortinas further contends that because the ALJ erroneously rejected the sole medical opinion about these limitations, the RFC is not supported by

substantial evidence and is instead based on the ALJ's improper lay assessment of the medical evidence.

In assessing a claimant's RFC, the ALJ must consider all evidence in the record, including the limiting effects of all documented impairments, regardless or whether those impairments are severe or not. 20 C.F.R. § 1545(a)(2)–(3). "[T]he determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Accordingly, the ALJ is not required to endorse a medical opinion of record in fashioning the RFC, and may adopt or reject, in part or in full, any opinion she concludes is not supported by or consistent with the medical evidence. *See id.*; *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) ("[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.") (quoting *Moore v. Sullivan*, 990 F.2d 901, 905 (5th Cir. 1990)).

Further, the ALJ is not required to "give controlling weight to a treating physician's opinion, as was mandated by federal regulations and [Fifth Circuit] caselaw in the past." *Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520c). "For claims filed after March 27, 2017, an ALJ instead considers a list of factors in determining what weight, if any, to give a medical opinion." *Id.* at 719. (citing 20 C.F.R. § 404.1520c). "The most important factors in determining the persuasiveness of a medical source are whether the source's medical opinion is based on 'objective medical evidence and supporting explanations' and the 'consistency' of the source's opinion with the evidence from other medical and nonmedical sources in the claim." *Id.* (quoting 20 C.F.R. § 404.152).

Cortinas complains that the ALJ did not adequately address Dr. Osuji's opinion that Cortinas's conditions may cause concentration and attention difficulties. ECF No. 13 at 9.

9

Specifically, Cortinas asserts that the vocational expert was never asked about such limitations nor did the ALJ consider Dr. Osuji's opinion in her decision. However, the ALJ is not required to articulate how she considered every medical opinion from a provider; the ALJ is only required to "build an accurate and logical bridge between the evidence and final determination." *Price v. Astrue*, 401 F. App'x 985, 987 (5th Cir. 2010) (per curiam). The ALJ notes in her analysis that portions of Dr. Osuji's opinion are inconsistent with prior treatment notes. ECF No. 10-2 at 18. Nothing in the treatment notes supports Dr. Osuji's opinion that Cortinas may suffer from concentration or attention limitations. Thus, while the ALJ does not squarely address Dr. Osuji's opinions concerning Cortinas's purported concentration or attention limitations, the ALJ has built an accurate and logical bridge between the evidence—or lack thereof—and the final RFC determination.

Further, the ALJ appropriately weighed Dr. Osuji's opinions concerning standing and walking. In her decision, the ALJ notes that Dr. Osuji's opinion that Cortinas can only stand and walk for one hour in an eight-hour workday is inconsistent with the doctor's own treatment notes. *Id.* The ALJ specifically points to two exams—one predating the medical opinion and one postdating the medical opinion—where Dr. Osuji notes that Cortinas had a "normal gait." *Id.* Again, the ALJ created a sufficient logical bridge between the evidence and the RFC determination.

As to the limitation on absenteeism, the ALJ also found Dr. Osuji's opinion inconsistent with the medical records. Dr. Osuji opined that Cortinas is likely to be absent from work once or twice a month, yet Dr. Osuji's notes evidence a "fairly modest" treatment plan and lack of any history of emergency or urgent care treatment. *Id.* Thus, the ALJ did not err in evaluating Dr.

Osuji's medical opinion concerning absenteeism, walking and standing, and concentration and attention limitations under § 404.1520c.

Moreover, the ALJ's RFC determination is supported by substantial evidence. In addition to the portions of Dr. Osuji's medical opinion that she found persuasive, the ALJ also cited medical and non-medical evidence in the record as support for the RFC. For example, the ALJ cites clinical visits in the years before and after the medical opinion that documented Cortinas's obesity, diabetes, and pain, numbness, and swelling in his left foot. *Id.* at 18–19; *see also* ECF No. 10-7 at 4–5, 10–11, 14, 24, 32, 38, 41, 52, 66, 68–69; ECF No. 10-8 at 2, 12, 23, 34, 46. The ALJ also notes that the objective medical records documented that Cortinas has a normal gait, minimal physical limitations, and adheres to a modest treatment regimen. ECF No. 10-2 at 18; *see also* ECF No. 10-7 at 9, ECF No. 10-8 at 34–53. Finally, the ALJ accounted for Cortinas's testimony about his ability to drive, grocery shop, and perform other activities of daily living. ECF No. 10-2 at 18, 43–45. As such, while the ALJ did not adopt Dr. Osuji's medical opinion in whole, she appropriately relied on portions of the opinion that she considered persuasive, as well as the evidence in the record, to formulate the RFC. *See Taylor*, 706 F.3d at 603 ("What [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.").

## CONCLUSION

For the foregoing reasons, the recommendation of the Magistrate Judge is **ACCEPTED**, and the decision of the Commissioner is **AFFIRMED**. The Clerk is instructed to enter a judgment on behalf of Defendant and to close this case.

It is so **ORDERED**.

**SIGNED** this 15th day of August, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE